[No. C074297. Third Dist. Mar. 9, 2015.]

THE PEOPLE, Plaintiff and Respondent, v.
VINCENT RIVERA et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I, II, III, V, VI, and VII of the Discussion.

## COUNSEL

Laura Schaefer, under appointment by the Court of Appeal, for Defendant and Appellant Vincent Rivera.

Jerome P. Wallingford, under appointment by the Court of Appeal, for Defendant and Appellant Fred Huante.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ROBIE, Acting P. J.**—This case involves criminal convictions arising from two shootings separated by less than one month, both in retaliation for stolen drugs. In the second shooting, Francisco (Frankie) Flores was killed. A jury found codefendants Vincent Rivera (the shooter) and Fred Huante guilty of first degree murder for Frankie Flores's death. The jury also found

defendants guilty of, among other things, the attempted murders of Michael Flores, Aaron Amaro, and Paul Amaro. Both Rivera and Huante appeal, raising seven contentions.

We reverse Huante's first degree murder conviction pursuant to *People v. Chiu* (2014) 59 Cal.4th 155 [172 Cal.Rptr.3d 438, 325 P.3d 972] (*Chiu*), in which our Supreme Court held "an aider and abettor may not be convicted of first degree *premeditated* murder under the natural and probable conse-quences doctrine." (*Id.* at pp. 158–159.) On remand, the People may either accept a reduction of Huante's conviction to second degree murder or retry the first degree murder charge under a proper theory. (See *id.* at p. 168.)

We reject defendants' other challenges to the judgment. These other challenges relate to trial counsel's effectiveness, the trial court's decisions to excuse a juror and consolidate the two shootings for trial, alleged instruc-tional error, alleged error in allowing Huante's attorney to appear by speaker-phone, and cumulative prejudice from the alleged errors. Defendants join in each other's arguments to the extent the joinder benefits them.

## FACTUAL AND PROCEDURAL HISTORY

### A

*Background for All Charged Crimes*

Rivera and Huante committed the charged crimes as revenge for the robbery of drugs from Huante. The facts behind that robbery were as follows: In late February or early March 2011, brothers Michael Flores and Frankie Flores and others were hanging out in Frankie's 1996 black Chevrolet Impala near a park, when Huante came up to Frankie Flores and asked if he wanted to buy cocaine. Huante showed Frankie Flores the cocaine, and the two exchanged telephone numbers.

Later, Frankie Flores told Michael Flores they were going to rob Huante of some drugs. They took their mother's Trailblazer because Huante had seen Frankie's black Chevrolet Impala. Michael Flores drove Frankie Flores and some others in the Trailblazer toward the park. Frankie Flores telephoned Huante, who then showed up with a half ounce of cocaine. Frankie Flores took the cocaine, pointed a gun at Huante, and then Michael Flores quickly drove them away. As they fled, Michael Flores heard five gunshots behind them.

B

## The Attempted Murders of the Amaro Brothers on March 27, 2011

On March 27, 2011, Paul Amaro was driving his 1996 black Chevrolet Impala with his brother Aaron Amaro in the front seat, when Paul heard a "loud noise." Paul Amaro saw a man, whom he later identified as Huante in a photographic lineup, shooting at him and his brother. From a separate lineup, Paul Amaro identified Rivera as the driver of the car Huante was in. He did not know either Huante or Rivera. Paul Amaro had met Frankie Flores at a family party once and realized that they drove identical cars. Aaron Amaro was shot in the leg, had to have surgery, and was on crutches for two to three months.

C

## The Murder of Frankie Flores and Attempted Murder of Michael Flores on April 14, 2011

On April 14, 2011, Frankie Flores drove himself and his brother Michael Flores in his black Impala to a strip mall. When they got to the strip mall, they stayed talking inside the car. A truck pulled up alongside them, and the driver (whom Michael Flores identified as Rivera) pulled out a gun. Michael Flores told his brother, " 'That dude's got a gun. Start the car. Let's leave.' " Frankie Flores started up the Impala. Rivera hopped out of the truck, went up to the Impala's driver's side window, and asked if the driver was " 'Frankie.' " Frankie said, " 'No. You got the wrong person.' " Rivera called to his passenger in the truck (whom Michael Flores identified as Huante) and asked, " 'Is that him?' " Huante got out of the truck and ran around to the back of the truck. Frankie Flores put his Impala in reverse, and as he did, Rivera started shooting. Michael Flores got shot twice, through the mouth and in the forearm. Frankie Flores was shot six times, including fatal shots to his lung and heart. Frankie Flores died within minutes of being shot. According to Michael Flores, neither he nor his brother had a weapon on or near them at the time of the fatal shooting.

Valentino Hernandez and his mother, Toni Hernandez, saw the shooting while in their car at the strip mall's parking lot. Toni Hernandez heard Rivera say to Huante, " 'Come here. Look at what this mother-fucker has on his lap.' " Later, Valentino Hernandez was talking with his mother and, according

to Toni Hernandez, Valentino said, " '[one of the Flores brothers] had a gun on his lap.' "[1] They quickly drove out of the parking lot after the shooting started.

A ballistics expert determined that the expended bullets from the March 27 shooting and the April 14 shooting were discharged from the same firearm.

## DISCUSSION

## I–III[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV

### Huante's First Degree Murder Conviction Must Be Reversed for Instructional Error

Huante contends his conviction for the first degree murder of Frankie Flores must be reversed because the instructions impermissibly allowed the jury to find him guilty of first degree murder if it found the target crime of the uncharged conspiracy was discharging a firearm at an occupied vehicle and that first degree murder was a natural and probable consequence of that target crime. The claim of impermissibility is based on *Chiu*, in which our Supreme Court held that the most a defendant can be found guilty of in a similar situation (aiding and abetting instructions that allowed a first degree premeditated murder conviction on a natural and probable consequences doctrine) was second degree murder. (*Chiu, supra,* 59 Cal.4th at pp. 158–159, 168.) The People do not argue the instructions were correct; rather, they argue the error was harmless beyond a reasonable doubt.

As we explain, there was error under *Chiu* and it was prejudicial.

## A

### The People's Theory of Murder as It Applied to Huante and the Instructions

The instructions told the jury that Huante was charged with Frankie Flores's first degree murder and Michael Flores's first degree attempted

---

[1] The court instructed the jury to consider this statement for Valentino Hernandez's and Toni Hernandez's states of mind and not for the truth of the matter. Rivera testified at trial that passenger Michael Flores had what looked like a gun in his hand.

[*] See footnote, *ante,* page 1350.

murder based on two alternative theories: (1) Huante was guilty of those crimes as an aider and abettor,[2] or (2) Huante was guilty of those crimes as a member of an uncharged conspiracy.[3]

As to the uncharged conspiracy theory of first degree murder and attempted murder, the jury was instructed in pertinent part as follows:

"A member of a conspiracy is . . . criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is the natural and probable consequence of the common plan or design of the conspiracy. This rule applies even if the act was not intended as part of the original plan. [¶] A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes."

"To prove that the defendant is guilty of the crimes charged in Count One [(murder of Frankie Flores)] and/or Count Two [(attempted murder of Michael Flores)], the People must prove that:

"One, the defendant conspired to commit one of the following crimes: murder, attempted murder, robbery, and/or discharge of a firearm at an occupied vehicle;

"Two, a member of the conspiracy committed murder as charged in Count One and/or attempted murder as charged in Count Two to further the conspiracy; and

"Three, murder as charged in Count One, and/or attempted murder as charged in Count Two, were a natural and probable consequence of the common plan or design of the crime that the defendant conspired to commit."

B

*The Error in These Instructions*

Under these instructions, it was possible for the jury to have found Huante guilty of first degree murder if it found the target crime of the uncharged conspiracy was discharging a firearm at an occupied vehicle and that first degree murder was a natural and probable consequence of that target crime.

---

[2] There was no error in the aider and abettor instructions because, unlike in *Chiu,* here the aider and abettor instructions did not refer to the natural and probable consequences theory of liability. The only instructions that did were the conspiracy instructions.

[3] The prosecutor in closing also argued these two theories as to Huante, noting "there's multiple ways to allow liability in this case—conspiracy, aiding and abetting."

■ The error in finding first degree murder under this theory is based on the California Supreme Court's reasoning in *Chiu, supra,* 59 Cal.4th 155, holding a defendant who is an aider and abettor cannot be convicted of first degree murder under a natural and probable consequences theory. (*Id.* at pp. 158–159.) The court found that due to the vicarious nature of liability under the natural and probable consequences theory (*id.* at p. 164), "the connection between the defendant's culpability and the perpetrator's premeditative state is too attenuated to impose aider and abettor liability for first degree murder under the natural and probable consequences doctrine, especially in light of the severe penalty involved . . ." (*id.* at p. 166).[4]

The error here is similar. As we just explained, the error in *Chiu* was imposing aider and abettor liability for first degree murder under the natural and probable consequences doctrine. The error here is imposing uncharged conspiracy liability for first degree murder also under the natural and probable consequences doctrine. In these contexts, the operation of the natural and probable consequences doctrines is analogous. This analogy appeared in *Chiu* itself, when the court was cataloguing examples of the natural and probable consequences doctrine as follows: "The natural and probable consequences doctrine was recognized at common law and is firmly entrenched in California law as a theory of criminal liability. ([*People v.*] *Prettyman* [(1996)] 14 Cal.4th [248,] at pp. 260–261 [58 Cal.Rptr.2d 827, 926 P.2d 1013]; *People v. Durham* (1969) 70 Cal.2d 171, 181–185 & fn. 11 [74 Cal.Rptr. 262, 449 P.2d 198]; cf. *People v. Kauffman* (1907) 152 Cal. 331, 334 [92 P. 861] [conspiracy liability]; [citation].)" (*Chiu, supra,* 59 Cal.4th at p. 163.) Thus, when the California Supreme Court in *Chiu* was explaining the natural and probable consequences doctrine, it understood its applicability to both aiding and abetting and conspiracy theories.[5]

Under both these theories, the extension of liability to additional reasonably foreseeable offenses rests on the "policy [that] conspirators and aiders and abettors should be responsible for the criminal harms they have naturally, probably and foreseeably put in motion." (*People v. Luparello, supra,* 187 Cal.App.3d at p. 439.) The problem with extending a defendant's liability for a first degree premeditated murder to an aider and abettor (and we hold also a

---

[4] The rationale here applies only to the target offense of discharging a firearm at an occupied vehicle. This is so because if the jury found that the target offense was either murder or attempted murder, that would mean that the conspirators planned to commit murder, amounting to first degree premeditated murder. If the jury found that the target offense was robbery, the murder would be first degree under the felony-murder rule.

[5] The difference in the two theories of liability is that "the conspirator need only intend to agree or conspire and to commit the offense which is the object of the conspiracy [citation]; while the aider and abettor must intend to commit the offense or to encourage or facilitate its commission . . . ." (*People v. Luparello* (1986) 187 Cal.App.3d 410, 439 [231 Cal.Rptr. 832]; see *People v. Smith* (2014) 60 Cal.4th 603, 616–617 [180 Cal.Rptr.3d 100, 337 P.3d 1159].)

coconspirator) under the natural and probable consequences doctrine was explained in *Chiu*, in pertinent part, as follows: "First degree murder, like second degree murder, is the unlawful killing of a human being with malice aforethought, but has the additional elements of willfulness, premeditation, and deliberation which trigger a heightened penalty. [Citation.] That mental state is uniquely subjective and personal. It requires more than a showing of intent to kill; the killer must act deliberately, carefully weighing the consider- ations for and against a choice to kill before he or she completes the acts that caused the death. [Citations.] Additionally, whether a direct perpetrator commits a nontarget offense of murder with or without premeditation and deliberation has no effect on the resultant harm. The victim has been killed regardless of the perpetrator's premeditative mental state. Although we have stated that an aider and abettor's 'punishment need not be finely calibrated to the criminal's mens rea' [citation], the connection between the defendant's culpability and the perpetrator's premeditative state is too attenuated to impose aider and abettor liability for first degree murder under the natural and probable consequences doctrine, especially in light of the severe penalty involved and the above stated public policy concern of deterrence." (*Chiu, supra,* 59 Cal.4th at p. 166.)

■ Given these reasons articulated by the California Supreme Court for limiting aider and abettor liability under the natural and probable conse- quences doctrine to second degree murder and the analogy between aiding and abetting and conspiracy that we have explained, we hold that the trial court here erred in instructing the jury it could reach a verdict of first degree murder for Huante if it found that the target crime of the uncharged conspiracy was discharging a firearm at an occupied vehicle and that first degree murder was a natural and probable consequence of that target crime.

C

*The Instructional Error Was Prejudicial; The Remedy Is to Reduce Huante's Conviction to Second Degree Murder or Remand for Retrial on First Degree Murder*

"When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground. [Citations.] Defendant's first degree murder conviction must be reversed unless we conclude beyond a reasonable doubt that the jury based its verdict on the legally valid theory . . . . [Citation.] We cannot so conclude." (*Chiu, supra,* 59 Cal.4th at p. 167.)

The record shows that the jury may have based its verdict of first degree premeditated murder for Huante on the natural and probable consequences

theory. During deliberations, the jury sent the trial court a note asking, "If Vincent Rivera is found guilty of the murder of Frankie Flores, and if Fred Huante is found to be a[n] aider/abettor and/or co-conspirator in the murder of Frankie Flores, is Fred Huante guilty of the same level of murder (1st degree, 2nd degree) as Vincent Rivera?" The court referred the jury back to the instructions it had given previously on these areas, including the erroneous instructions we have discussed above.

The People argue the error was harmless because "[b]y returning a guilty verdict on the attempted murder count [(count two)], the jury found that Huante intended to kill Michael Flores, and he also possessed the required mens rea for first degree murder. Once the jury found the necessary intent to commit murder, along with premeditation and deliberation, the . . . instructional error was harmless . . . ."

The People's argument is refuted by the following instruction (CALCRIM No. 601 as modified) regarding deliberation and premeditation as it applied to Huante: "As to defendant Fred Huante, the attempted murder was done willfully and with deliberation and premeditation *if either* the defendant Fred Huante *or* defendant Vincent Rivera or both of them acted with that state of mind." (Italics added.) Thus, the jury's guilty verdict on the first degree attempted murder of Michael Flores (count two) as to Huante may have meant nothing more than the jury found *Rivera* acted with deliberation and premeditation, and that Rivera's deliberation and premeditation was imputed to Huante pursuant to this instruction. It did not mean, as the People claim, the jury necessarily found that Huante personally premeditated a killing on April 14.[6]

And, nothing about the guilty verdict in count two, on which the People place all their reliance, indicates the jury used the correct aiding and abetting theory rather than the flawed conspiracy theory, to find Huante guilty of the first degree premeditated murder of Frankie Flores in count one. The verdict in count two could have been based on a jury finding that Huante was a coconspirator in the shooting into an occupied motor vehicle and that attempted murder was a natural and probable consequence of that target crime. If the jury so found, and then found that Rivera acted willfully and with deliberation and premeditation in perpetrating the attempted murder in count two (pursuant to CALCRIM No. 601 as quoted above), the same instruction required the jury to apply that finding of premeditation to Huante as well.

---

[6] There were no other pertinent instructions that applied to Huante for the finding of requisite intent to kill for counts one (the murder of Frankie Flores) and two (the attempted murder of Michael Flores) that took place on April 14, 2011, other than this one and the erroneous conspiracy instruction we have already discussed.

We turn then to the remedy. Because "the court's instructional error affected only the degree of the crime of which [defendant] was convicted," we " 'may reduce the conviction to [the] lesser degree [of the offense] and affirm the judgment as modified, thereby obviating the necessity for a retrial,' " but at the same time we must " 'give the prosecutor the option of retrying the greater offense, or accepting [the] reduction to the lesser offense.' " (*People v. Woods* (1992) 8 Cal.App.4th 1570, 1596 [11 Cal.Rptr.2d 231]; see *People v. Hart* (2009) 176 Cal.App.4th 662, 674–675 [97 Cal.Rptr.3d 827].) Accordingly, that is what we will do.

### V–VII*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed as to Rivera.

Huante's conviction of first degree murder is reversed unless the People accept a reduction of the conviction to second degree murder. If, after the filing of the remittitur in the trial court, the People do not bring Huante to retrial on the premeditation and deliberation element within the time set forth in Penal Code section 1382, subdivision (a)(2)—60 days unless waived by the defendant—the trial court shall proceed as if the remittitur constituted a modification of the judgment to reflect a conviction of second degree murder and shall resentence Huante accordingly.

Duarte, J., and Hoch, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 17, 2015, S225633.

---

*See footnote, *ante*, page 1350.